Next case on is Harenton Hotel v. Village of Warsaw. Good morning. Good morning. May it please the court. I'm Alan Knopf for the appellants. The first point is that the plaintiff did sufficiently plead his due process claim. The first page of the amended complaint states in paragraph 2, plaintiffs bring this action to recover damages for the violation of his due process and equal protection rights under the 14th Amendment. That's a procedural due process claim. Where did you plead your substantive due process claim? Well, in the second clause of action, the pleading is that it was arbitrary actions in bad faith without a rational basis and a denial of plaintiff's substantive rights under the 14th Amendment. And even my opponent in his affidavit in support of his motion for summary judgment says, and this is on page 48 of the joint appendix, quote, plaintiff also claims that his due process and equal protection rights were violated. So I think, granted, it was not artfully pled, there's no question about that. I'm curious whether that comes, meets, you know, the Twombly-Iqbal standards for pleading a substantive due process. Your Honor, I think it put the defendants on notice to the claim of due process. Certainly, I would grant you on procedural, but I'm not there with you on substantive due process. Right, Your Honor. Well, I think, again, I think that certainly it does meet, you know, it does put them on notice because we talked about substantive rights under the 14th Amendment and also the court, I think, would abuse its discretion if it was insufficient, should have allowed us to replete on that point, Your Honor, because it is clear. I think we do. You already had one bite at the amending complaint, Apple, correct? Yeah, there was originally, I think, a motion to amend at the initial outset of the case. And, again, yes, no question, it could have been more artfully pled, but I think the question is were they on notice? And even in their motion papers, they say due process. They didn't limit it to procedural due process. They say due process. The other claim I was having a little bit of difficulty following was your retaliation claim. What's your retaliation claim? Your Honor, basically, the claim there is Mr. Hare went to higher authorities to complain about the way the village of Warsaw was treating him. They went to the state, Mr. Vijay Kumar, and then within a couple of weeks the village was on him asking for more materials, things for a project where they already had building permit, already had got site plan approval and basically making him go back to square one. But as I read the record, it appears that the retaliation here preceded the protected activity. Why is that not the case? There's no question that some of the offensive conduct occurred before he brought the Article 78 proceeding in New York Supreme Court or went to the state. However, initially he went in front of the village board, complained. So we're claiming that some of this was in retaliation for him speaking up. And there were plenty of activities that happened after he went to the various officials. You're complaining about not getting the permit because that's the source of your damages, right? Right, Your Honor. And we have vested right in the variances. He originally got variances. The village is saying that, well, that's not a property right, but a variance doesn't expire. There's nothing in the code that says that. New York law says that variances basically run with the land. They're permanent. So here he should have been. He had a building permit. And then they arbitrarily, for the first time on record, no one has any recollection of any person ever not having a renewal of their building permit. It had always happened. There's no testimony to the contrary. So for the first time here, the village refuses to renew the permit. And they had always given one-year renewals. And again, why did they do this? I think the village officials did not like my client. Ms. Duell, who's a member of a quasi-judicial board, the Zoning Board of Appeals, she said he's only doing it to try to rip off investors. The testimony, there's plenty of testimony that she disliked my client because she claimed that he had, according to one client, gypped her, not paid her in private business transactions. I also am having difficulty following your equal protection claim. And specifically, help me understand why the comparators are comparable to your client. Well, there's two bases for that. One is that anyone who had applied for- You had three- There were commercial projects. All right, we'll take the first one. Why is that one comparable? Well, Your Honor, they were all commercial projects for renovation. This is a renovation of a commercial building. I mean, every project is going to be different. So there's no question there were- You don't have a class of one claim if you're dealing with different projects. Well, Your Honor, I don't think you have to get to that level. The question is, first of all, on application for renewal, had any permit applicant ever been denied renewal of their building permit? And the answer is no, there's no evidence of that. So we don't have to go into the detail of looking at every building permit and seeing how they're different. And then for every commercial project- What's your class of one theory? That every applicant who had applied for renewal of their permit had been granted that until my client- One of the applicants was a clinic that involved or wanted to remodel office space in a small garage. Is that right? Right. The other was the construction of a restaurant. Yes. Is that right? Yes. And what we're talking about here is a 50-room hotel. Right. On 31,000 square feet. Right. Is that the same type or scale? Are those things the same type or scale which we've required? In the context of construction projects for class of one claims? I think so, Your Honor, because we don't have to get to the level of looking at the individual project's specifications. No one had ever proposed a hotel in the village. So why doesn't that undermine your class of one equal protection claim? Because every- Because you are alone. Well, because lots of people have applied for renewal of their permits and they were all granted- I don't understand why your answer to my question, which is you're the first, doesn't completely undermine your class of one claim. Because we're not the first applicant for a commercial project, for renovation of a building for a commercial project. And, yes, if you drill down and look at the plans, they're all different plans, different scope. But that doesn't mean the equal protection clause doesn't apply in the village where, you know, this is a small village, there's not a lot of projects, but anybody who has a commercial project was not treated this way. And I think there's clearly there was animus- Then you have to be arguing to us that there, other than the fact that these commercial projects had permits, which then were renewed, there is no other way to look at them other than this is a commercial project, that's a commercial project, we're a commercial project, they got a permit renewed, they got a permit renewed, we did not. Yes, although I'm kind of making- You don't even look at the scope of the project. Right, right. Because the issue is not looking at whether they complied with the code or, you know, interpreting like I think the Neelan's or the one First Circuit case, the Candy Allen case, there they were looking at specifics of the project plans and how it applied to the regulations and all. I'm not saying you get that far. You look at other commercial projects, they were all treated differently. And the commercial projects weren't the ones that got renewals. I'm saying any project that applied, a residential project, any project, anybody who applied for a renewal got that renewal except for my client. But commercial projects, this is the first one that was treated this way. And, again, we had vested rights in our- You're telling us we can't, we're really not supposed to distinguish between the type or scale of project in assessing a class of one claim. Your Honor, I think that's for the jury. I think the jury could. But I don't think it's a threshold matter. That's for the court to say that we don't meet the requirements of the claim. Thank you, Mr. O'Connor. Thank you. Reserve two minutes for rebuttal. Mr. O'Connor. If I could address the class of one claim. I'm sitting there listening to the appellant's argument. And I think what the court needs to know right off is the comparator projects, the two drug dependency clinics and the restaurant were all completed without extensions of a building permit. They were done within a year. They were done within a year. So there was no requirement for an extension on those permits. And therefore, there are no comparators that have been offered by the appellant to establish a class of one claim. Again, doing this in two different cases, but this goes outside the record. I mean, is there anything that indicates in the record that the standards that apply for renewals of building permits? No, there's not, Your Honor. Even though it's not in the record, are there anything in the ordinances of the town, which I guess would be matters of law that we could look at, that address those? Other than, excuse me, in the local code, the Warsaw Village Code, there is a provision, which I think is reflected in the joint appendix, that the building inspector can extend a building permit. And that was done in this case. It was done in 2008. The problem was in 2009 when Mr. Herr went for a second extension, there hadn't been substantial progress on a project that had a completion date of late 2008. So here we are almost a year later in October 2009, and there's not significant progress on this building. Coupled with residents expressing concern as to why when this was supposed to open a year ago, the exterior still looks the same. Nothing really had been done in getting this project completed. So I hope that answers your question, Your Honor. It does. Thank you very much. Now, I'm not sure if you have any other questions for me. It doesn't look like it. Okay. Then I'll sit down and shut up. Thank you very much. Thank you. I've not heard that before. I'll sit down. You could sit here until you can't stand up to leave. Unless you've got a plane to catch. Okay. Thank you. Yeah, I just think you have to look at the substance of the pleading that we do plead or put on sufficient notice of the substantive due process claim that's there. Again, that- What is your substantive due process claim? Articulate it for me, please. Yeah. We had variances granted and a vested property right to go forward with the project. They got a use variance, and the village would not allow that to go forward. Ms. Duell, who's on the one board- Let me ask you in connection with what you just said. The village would not allow it to go forward. Do you have a dispute with the facts that Mr. O'Connor gave us in response to my question? That is, with respect to the timing. The timing. It did take a while. This was 2008. There was the financial recession then, and his progress was slow, but it was a large project, as we admit, and it was taking a while, but everyone else had been renewed in the past. Again, the commercial projects, as I said earlier, had not been sought renewals, but any other project in the village that sought renewals had gotten renewals. What exactly happened to your client that you would urge to us is conscious shocking, as is required for substantive due process? To me, it's conscious shocking that Ms. Duell, who's on this quasi-judicial board, said that she was going to stop the project. The village attorney told one of the investors, quote, that he's never going to let it happen. It's not going to go anywhere. He's just not going to let it happen, referring to the code officer. I think that's oppressive. That's conscious shocking, and today in this- I've heard a lot worse. Well, I guess some of the earlier cases I've heard some worse things, but to me- You're a law relative, but your position is that as a matter of law, that is outrageous, conscious shocking conduct. Yes, that the member of the zoning board was pursuing her personal interests, her personal desire for revenge to stop the project. I think today in this world of ethical issues at state and federal levels, I think at local government we can't allow people to pursue their own personal agendas. Lastly, I just want to ask the court to take judicial notice. Article March 27th of this year in the Batavia Daily News, where the mayor said that they were proposing a new hotel on this site with a $1 million grant the village is getting. He says, quote, this is something that has been in my mind ever since I became mayor seven years ago, unquote. So my point is that the village was trying hard to stop Mr. Hare from a project that apparently now is going forward with somebody else with the village's cooperation. But they really were not treating him fairly. So yes, this does shock my conscience. I think they were being oppressive, arbitrary in the constitutional sense by putting up these roadblocks, giving them requirements no one had ever had advancing their personal agendas. Thank you very much. Thank you. Thank you both. Safe travels back. Thank you.